UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OMAR MARTINEZ,

    Plaintiff,

  v.

TERMINEX INTERNATIONAL COMPANY, L.P., et al.,

    Defendants.

Case No. 15-cv-00619-TEH

**ORDER FOR ADDITIONAL DISCOVERY RE: MOTION TO COMPEL ARBITRATION**

On February 9, 2015, Plaintiff filed suit against Defendants, alleging that, in the course of terminating his employment, his former employers violated the Fair Credit Reporting Act, California's Investigative Consumer Reporting Agencies Act, and California's Unfair Competition Law. (Docket No. 1).

On April 15, 2015, Defendants filed the present motion to compel arbitration. (Docket No. 23). The motion contends that Plaintiff agreed to arbitrate disputes between the Parties when he acknowledged receipt of Defendants' "We Listen Policy" as a part of completing certain electronic forms. Mot. at 6-7. Importantly, however, there is no evidence that Plaintiff ever *expressly* agreed to be bound by this policy, *i.e.*, he never said that he agreed to the policy or otherwise explicitly indicated agreement. Instead, Defendants argue that Plaintiff impliedly assented to the policy by completing the electronic forms and beginning/continuing his employment after receiving "inquiry notice" of the policy's terms. Mot. at 6-8.

The actual context of Plaintiff's interaction with the arbitration policy in dispute is unclear. Defendants provide a declaration from Natalie Smith, the Manager of HR Analytics and Administration for ServiceMaster, one of the defendants in this case. (Docket No. 23-1). In this declaration, Smith explains that Plaintiff was instructed to "complete an employment application electronically using the Aon Hewitt myHR portal." Smith Decl. ¶ 2. The company's "employment application," Smith continues, includes a

1   "New Hire Checklist" that must be completed by the applicant. *Id.* ¶ 3. The "Checklist

2   Instructions" provide:

> This checklist will help you prepare for your first days with the company. Checklist tasks can include multiple steps. As you complete a step, your changes will be automatically saved, and you will move on to the next step. If you come back later to complete the checklist, you can use the links at left to access any unchecked steps.

*Id.* Smith's declaration proceeds to explain that as part of the checklist, a "prospective employee" must "review and acknowledge" the company's various employment policies, including the "We Listen Policy," which is apparently a dispute resolution plan. *Id.* ¶ 4. The relevant screen within the application for the "We Listen Policy" includes the following instructions:

> Read the We Listen Policy, and then select Done to move onto the next step.
>
> Note: By selecting Done, you acknowledge that you have been given access to the We Listen Policy and that it describes important information about ServiceMaster (or 'the company') and that you should consult your supervisor, manager, or human resources regarding any questions about information contained in the policy.
>
> Click here when done.

*Id.* ¶ 5-6.

When an applicant clicks on the "We Listen Policy" link indicated by the underlined text in the bock quote provided in the previous paragraph, a PDF of the document is downloaded to the applicant's computer. *Id.* ¶ 5. The actual PDF is not entitled the "We Listen Policy," as it is called on the applicant's Checklist screen, but is instead more descriptively entitled the "ServiceMaster 2013 *We Listen* Dispute Resolution Plan." *Id.* Finally, clicking the "Done" button generates an electronic record of the date and time that the applicant clicked "Done," which Plaintiff did at 10:19 AM on January 28, 2015. *Id.* ¶ 7-8.

Plaintiff provides some additional contextual information in his Declaration. Martinez Decl. (Docket No. 24-1). Plaintiff explains that in January 2015, he was

informed that his employer, Moxie Pest Control, "had been sold and that Defendant Terminix would be taking over." *Id.* ¶ 2-3. He continues: "During that time, I was told I would keep my job but that I would need to complete Terminix paperwork." *Id.* ¶ 3. Along with his former-Moxie coworkers, Plaintiff was brought into a room containing computers, where he was "told to complete a series of screens on the computer provided to [him] so that [he] could begin to get paid by Terminix and receive employment benefits. The process involved clicking through a series of electronic screens." *Id.* ¶ 4. However, Plaintiff states that he was not provided with "any guidance on how to complete the electronic forms and was not able to seek clarification from anyone." *Id.* ¶ 5. The entire process lasted "approximately 20-30 minutes." *Id.* ¶ 6. Finally, Plaintiff claims that he "repeatedly asked for copies of the paperwork but was never provided them." *Id.* ¶ 11.

In deciding a motion to compel arbitration, the Court must first determine "whether a valid agreement to arbitrate exists." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1139 (9th Cir. 2000) (citing 9 U.S.C. § 4). "Arbitration is a product of contract." *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092 (9th Cir. 2014). Parties are not required to arbitrate their disagreements unless they have agreed to do so. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (U.S.), LLC*, 55 Cal. 4th 223, 236 (2012). As a result, a contract to arbitrate will not be inferred absent a "clear agreement." *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50, 59 (2013). In determining whether a valid contract to arbitrate exists, the Court must apply ordinary state law principles that govern contract formation. *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002). Under California law, a "clear agreement" to arbitrate may be either express or implied in fact. *Pinnacle Mkt. Dev.*, 55 Cal. 4th at 236. The test for whether a party has consented to a contract is an objective one; the Court asks whether a "reasonable person" would understand a party's actions to be a manifestation of consent. *See Roth v. Malson*, 67 Cal. App. 4th 552, 557 (1998).

Because of the absence of "express" assent in this case, the Court must determine whether Plaintiff's assent was implied in fact. Accordingly, the context of Plaintiff's

3

allegedly implicit assent is essential to the Court's evaluation. Unfortunately, the Court has been provided with insufficient context to assess whether Plaintiff manifested implied-in-fact assent to Defendants' arbitration policy.

For example, it is unclear whether Plaintiff was a prospective employee applying for a new job or a current employee retaining his employment with an acquiring entity. The Court has been provided with competing facts in this regard. Defendants state that the electronic paperwork completed by Plaintiff contains a "New Hire Checklist" that was supposed to prepare Plaintiff for his "first days with the company." Smith Decl. at ¶ 3. If Plaintiff had any questions about the policies contained in the paperwork, he was supposed to consult his "supervisor, manager, or human resources." Smith Decl. at ¶¶ 3, 6. These facts suggest Plaintiff was completing paperwork as someone that had already been hired by Defendants. Nonetheless, Defendants refer to the paperwork as an employment "application," and characterize individuals completing the paperwork as "prospective employee[s]." *Id.* ¶¶ 2-3. Conversely, Plaintiff explains that he was told he would "keep [his] job," but needed to "complete Terminix paperwork" so that he could get paid and receive benefits. Martinez Decl. ¶¶ 3-4. Clarification of Plaintiff's status is vital to the Court's analysis, as it forms the basis for the specific actions that Defendants claim constituted an outward manifestation of assent to the arbitration policy.

Furthermore, the Court does not know what instructions, representations, or other information was provided to Plaintiff regarding the electronic forms.[1] Who told Plaintiff to complete the forms? What else was Plaintiff instructed to do in order to receive or maintain employment with Terminix? How many policies was Plaintiff instructed to review? Did other "screens" provide language that differed from that contained on the "We Listen" screen? Was Plaintiff given a time limit to complete the forms? Was the "We Listen Policy" link operational - *i.e.*, if the link was a hyperlink, did the computer

---

[1] As previously noted, Plaintiff states that he was not provided "any guidance on how to complete the electronic forms," and that he was "told to complete a series of screens on the computer" so that he could be paid. Martinez Decl. ¶¶ 4-5. Nonetheless, many questions remain.

4

have access to the internet, or was the link connected to the PDF through an intranet system or the program itself?  What opportunity was Plaintiff given to reject policies identified by the New Hire Checklist?  Once Plaintiff acknowledged receipt of these policies by clicking "Done" on the various screens, was there any final acknowledgment or agreement prompt before the final submission?

Ultimately, it is difficult to ascertain what a "reasonable person" would have done in Plaintiff's position, whether the electronic forms provided sufficient "inquiry notice," and whether Plaintiff impliedly assented to the arbitration provision, absent a basic understanding of the context in which Plaintiff allegedly agreed to Defendants' arbitration policy.

Accordingly, the Parties are hereby ORDERED to conduct limited discovery regarding the contract formation at issue in this motion to compel arbitration.  The questions and concerns addressed in this Order should provide guidance for this discovery.  Importantly, the Parties are NOT to address other legal questions at issue in this motion, such as the unconscionability of the arbitration provision, the arbitrability of the dispute, the condition precedent of mediation, etc.  The Parties shall submit simultaneous briefs regarding the additional discovery of <u>no more than ten pages</u>, in addition to relevant exhibits or declarations, on or before **June 19, 2015**.  It is FURTHER ORDERED that the motion hearing set for June 1, 2015, is continued to **June 29, 2015**, at 10:00 AM.

**IT IS SO ORDERED.**

Dated:  05/20/15                                         _____
                                                                       THELTON E. HENDERSON
                                                                       United States District Judge

5